IN THE MATTER OF:  D.C., C.C.

No. COA06-1638

(Filed 5 June 2007)

**1. Child Abuse and Neglect— neglect finding improper—petition alleged only dependency**

The trial court erred by adjudicating respondent mother's minor son to be a neglected juvenile when DSS alleged only dependency in its petition, and the case is remanded for adjudication and disposition hearings on DSS's petition alleging the minor child to be a dependent juvenile, because: (1) the trial court essentially amended the juvenile petition by allowing DSS to proceed on a condition not alleged in the petition; (2) N.C.G.S.

§ 7B-800 permits amendment only when it does not change the nature of the conditions upon which the petition is based; (3) the minimal allegations were insufficient to put respondent on notice that both dependency and neglect would be at issue during the adjudication hearing; (4) the box for neglect on the petition form was not checked and the factual allegations, while supporting the claim of dependency, did not allege the separate claim of neglect; and (5) the trial court did not adjudicate the child as dependent, but only as neglected.

2. **Child Abuse and Neglect— neglect—findings of fact—clear and convincing evidence**

The trial court's findings that the minor daughter was neglected was supported by clear and convincing evidence, because: (1) the episode that occurred where the sixteen-month-old child was found alone in a motel room was supported by clear and convincing evidence supporting the determination of neglect under N.C.G.S. § 7B-101(15); and (2) the minor child was exposed to an injurious environment that put her at an unacceptable risk of harm and emotional distress.

3. **Child Abuse and Neglect— neglect—failure to require services to assist in completing tasks necessary for reunification**

The trial court did not err in a child neglect and dependency case by failing to order DSS to provide services to assist respondent mother in completing the tasks necessary for reunification as required by N.C.G.S. § 7B-507(a), because: (1) DSS was relieved of its statutory responsibility to use preventative or reunification services to accomplish that goal for the minor daughter when the court determined that continued efforts to reunify the minor child with respondent are not likely to succeed and are not in the child's best interests; and (2) the court did in fact order that reunification services be provided for reunification with the minor son.

4. **Guardian and Ward— permanent legal guardianship—disposition order**

The trial court erred in a child neglect and dependency case by awarding permanent legal guardianship of respondent mother's minor daughter to her maternal aunt following disposition, and the case is remanded for a permanency planning hearing and entry of a permanency planning order containing all findings required by N.C.G.S. § 907, because: (1) N.C.G.S. §§ 7B-507

and 907 do not permit the trial court to enter a permanent plan for a juvenile during disposition; (2) respondent did not have the statutorily required notice that the trial court would consider a permanent plan for the minor child; and (3) the trial court did not make findings mandated by N.C.G.S. § 7B-907(b), (c), and (f).

Appeal by respondent-mother from order entered 8 September 2006, *nunc pro tunc* 10 August 2006, by Judge Joseph A. Blick in Pitt County District Court. Heard in the Court of Appeals 30 April 2007.

*Anthony Hal Morris for petitioner-appellee Pitt County Department of Social Services.*

*Wanda Naylor for Guardian Ad Litem.*

*Richard E. Jester for respondent-appellant.*

STROUD, Judge.

Respondent Jessica C. appeals an adjudication order in which the trial court determined two children, D.C. and C.C., are neglected juveniles as defined by N.C. Gen. Stat. § 7B-101(15). D.C. is a girl who was born on 8 August 2003 and C.C. is a boy who was born on 20 May 2006. Respondent is the biological mother of both children.

The dispositive questions before this Court are whether (1) the trial court erred by adjudicating C.C. to be a neglected juvenile when Pitt County Department of Social Services (DSS) alleged only dependency in its petition, (2) whether the trial court's findings that D.C. and C.C. are neglected are supported by clear and convincing evidence, (3) whether the trial court erred by failing to order DSS to provide services to respondent, and (4) whether the trial court erred by awarding permanent legal guardianship of D.C. to her maternal aunt following disposition. We affirm in part, reverse in part, and remand with instructions.

## I. Background

On 14 September 2005, DSS filed a petition alleging that D.C. is a neglected and dependent juvenile as defined by N.C. Gen. Stat. § 7B-101. In support of its petition, DSS also alleged that respondent left D.C. unsupervised, cursed at a social worker in D.C.'s presence, and spent $2,000.00 received in a disability check for care of D.C. in a reckless and wasteful manner. DSS further alleged that there is a history of domestic violence between respondent and D.C.'s puta-

tive father, and that respondent left D.C. with the putative father following a violent incident that resulted in respondent being physically injured. Finally, DSS acknowledged in its petition that respondent receives disability payments, suffers from mental retardation, has a history of unstable housing, and has failed to attend a screening for schizophrenia. That same day, the district court entered a nonsecure custody order awarding custody of D.C. to DSS. DSS then placed D.C. with D.C.'s maternal aunt and her husband, Angeline and James Phillips.

On or about 20 September 2005, DSS filed an amended petition containing additional allegations. In particular, DSS alleged that when D.C. was approximately sixteen months old, respondent left her unsupervised in a motel room where she was later found by a motel employee. The employee entered respondent's room and discovered D.C. alone after a guest reported that an infant in that room had been crying continuously. Thereafter, the employee contacted the local police department. Respondent did not return until after the police arrived, at which time she stated that she had been gone for only ten or fifteen minutes.

In the amended petition, DSS also alleged further details concerning respondent's use of her disability check, the documented incident of domestic violence between D.C.'s putative father and respondent, and the unstable nature of respondent's housing. DSS stated that respondent has a home in Chicod, but that she prefers to stay with her sister or in hotel rooms and that her transient lifestyle is a drain on her resources.

On or about 26 September 2005, the trial court entered a continued nonsecure custody order. In this order, the court found that respondent has an IQ of 58[1] and has been diagnosed with severe depression, as well as some additional health problems. At that time, the court appointed a guardian for respondent pursuant to N.C. Gen. Stat. § 1A-1, Rule 17.

On or about 5 October 2005, 1 December 2005, 14 December 2005, and 22 December 2005, the trial court entered additional orders continuing nonsecure custody. On or about 10 January 2006, the trial court entered an order extending until 9 February 2006 the time to prepare a multidisciplinary evaluation of respondent. By letter dated 23 February 2006 and in lieu of a multidisciplinary evaluation, the

---

1. In the disposition order entered 8 September 2006, *nunc pro tunc* 10 August 2006, the trial court found respondent's IQ to be 67.

court received a copy of the assessment for limited guardianship completed on respondent. On or about 20 January 2006 and 2 May 2006, the district court entered additional orders continuing nonsecure custody.

On 3 November 2005, respondent notified DSS that she was eight weeks pregnant. Respondent gave birth to C.C. on 20 May 2006. Two days later, DSS filed a petition alleging that C.C. is a dependent juvenile as defined by N.C. Gen. Stat. § 7B-101(9). In its petition, DSS incorporated verbatim all the allegations made with respect to respondent's care of D.C. and also alleged that respondent (1) received sporadic prenatal care for C.C., (2) refused to divulge the identity of C.C.'s father, (3) does not possess a crib, diapers, clothes, or formula for C.C., and (4) is incapable of providing care for a newborn.

On 23 May 2006, the district court entered a nonsecure custody order awarding custody of C.C. to DSS, after which DSS placed C.C. in a licensed foster home. On 26 May 2006 and 12 June 2006 the court entered continued nonsecure custody orders with respect to C.C.

The trial court heard DSS's petitions at an adjudication and disposition hearing held on 22 June 2006 and 10 August 2006. On 8 September 2006, the trial court entered an order (*nunc pro tunc* 10 August 2006) adjudicating both children to be neglected juveniles, ceasing efforts to reunify D.C. and respondent, awarding guardianship of D.C. to James and Angeline Phillips, and relieving DSS and Guardian Ad Litem from further responsibility with respect to D.C.

## II. Juvenile Petition

[1] Respondent argues that the trial court erred by adjudicating C.C. to be a neglected juvenile because the petition filed by DSS alleged only that C.C. is a dependent juvenile. We agree.

"The pleading in an abuse, neglect, or dependency action is the petition." N.C. Gen. Stat. § 7B-401 (2005). "The court may permit a petition to be amended when the amendment does not change the nature of the conditions upon which the petition is based." N.C. Gen. Stat. § 7B-800 (2005). To date, section 7B-800 has not been interpreted by the appellate courts; however, former section 7A-627, which similarly provided "[t]he judge may permit a petition to be amended when the amendment does not change the nature of the offense or the conditions upon which the petition is based," has been applied in several appellate decisions. N.C. Gen. Stat. § 7A-627 (1997). Section 7A-627

governed petitions alleging delinquency as well as petitions alleging abuse, neglect, or dependency. It has been repealed and re-codified at N.C. Gen. Stat. § 7B-800, with respect to abuse, neglect, and dependency and § 2400, with respect to delinquency.

In *In re Davis*, this Court held that section 7A-627 prevented a child from being adjudicated delinquent for an offense which was neither the crime charged in the juvenile petition nor a lesser included offense of the crime charged. *In re Davis*, 114 N.C. App. 253, 441 S.E.2d 696 (1994). In *Davis*, "[t]he trial court essentially amended the juvenile petition by allowing the State to proceed on a theory of burning of personal property," when the petition alleged only burning a public building. *Id.* Although the State argued that the juvenile waived his due process right to notice by " 'consenting to be tried for a slightly different offense arising out of the same operative facts,' " this Court rejected the State's argument "because jurisdiction over the subject matter of a proceeding cannot be conferred by consent, waiver, or estoppel."

Here, DSS alleged dependency, but proceeded on the theory of neglect at adjudication. As in *Davis*, the trial court "essentially amended the juvenile petition" by allowing DSS to proceed on a condition not alleged in the petition. Because N.C. Gen. Stat. § 7B-800 permits amendment only when it "does not change the nature of the conditions upon which the petition is based" and because DSS did not allege neglect in its petition, the trial court erred by entering an order adjudicating C.C. to be a neglected juvenile.

This application of N.C. Gen. Stat. § 7B-800 is supported by the language of §§ 7B-802, 805, and 807(a), which limit the matters to be considered, proved, and adjudicated to those conditions alleged in the juvenile petition. N.C. Gen. Stat. § 7B-802 provides that an adjudicatory hearing is "designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition." (Emphasis added.) N.C. Gen. Stat. § 7B-805 (2005) provides that the petitioner must prove "the allegations in a petition alleging, abuse, neglect, or dependency" by "clear and convincing evidence." (Emphasis added.) And, N.C. Gen. Stat. § 7B-807(a) provides "[i]f the court finds that the allegations alleged in the petition have been proven by clear and convincing evidence, the court shall so state" in a written order. (Emphasis added.)

We recognize that "allegations in a petition" may include specific factual allegations attached to a form petition for support. *Cf. In re*

*Hardesty*, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002) (explaining that a "bare recitation" of statutory grounds for termination, without an accompanying statement of facts sufficient to warrant termination, is insufficient to support a petition for termination of parental rights). Here, DSS incorporated such an attachment to the juvenile petition it filed when C.C. was two days old. The attachment restated verbatim all of the allegations DSS made approximately nine months earlier with respect to respondent's care of D.C. and added allegations as to C.C. that respondent (1) received sporadic prenatal care for C.C., (2) refused to divulge the identity of C.C.'s father, (3) does not possess a crib, diapers, clothes, or formula for C.C., and (4) is incapable of providing care for a newborn. These minimal allegations were insufficient to put respondent on notice that both dependency and neglect of C.C. would be at issue during the adjudication hearing. *See Hardesty*, 150 N.C. App. at 384, 563 S.E.2d at 82 ("While there is no requirement that the factual allegations be exhaustive or extensive, they must put a party on notice as to what acts, omissions or conditions are at issue.").

We emphasize that this holding is not based on DSS's mere failure to "check the box" for "neglect" on the form petition. While it is certainly the better practice for the petitioner to "check" the appropriate box on the petition for each ground for adjudication, if the specific factual allegations of the petition are sufficient to put the respondent on notice as to each alleged ground for adjudication, the petition will be adequate. In this case, the box for "neglect" was not checked, and the factual allegations, while supporting the claim of dependency, did not clearly allege the separate claim of neglect. We also note that the trial court did not adjudicate the child as dependant but only as neglected, and that neglect was the claim which was not alleged, or checked, in the petition.

For the reasons stated above, we reverse that portion of the trial court order which adjudicates C.C. to be a neglected juvenile. We remand this matter to District Court, Pitt County for adjudication and disposition hearings on DSS's petition alleging C.C. to be a dependent juvenile.

### III. Neglect

[2] Respondent argues that the trial court's findings that D.C. and C.C. are neglected are not supported by clear and convincing evidence. Because we reverse that portion of the trial court order adjudicating C.C. to be a neglected juvenile, we do not consider respondent's argument with respect to C.C.

In support of her argument, respondent emphasizes that the trial court orally stated it found neglect based on a single incident, but that the order actually entered contained numerous additional findings. In particular, the court stated, "I'm going to find that by clear and convincing evidence to support the County's Petition in this case of neglect, but specifically on the issue of the episode that occurred at the motel. I'm not convinced by clear and convincing evidence of the other incident, I do have some concerns about that." We agree with the trial court that "the episode that occurred at the motel" is supported by clear and convincing evidence and determine that the court's findings concerning this incident support its conclusion that D.C. is a neglected juvenile as defined by N.C. Gen. Stat. § 7B-101(15). Accordingly, we affirm the trial court order to the extent that it adjudicates D.C. to be a neglected juvenile.

As discussed above, petitioner must prove "the allegations in a petition alleging, abuse, neglect, or dependency" by "clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2005). "If the court finds that the allegations alleged in the petition have been proven by clear and convincing evidence, the court shall so state." N.C. Gen. Stat. § 7B-807(a) (2005). On appeal, this Court considers whether the trial court's findings of fact are supported by clear and convincing evidence and whether the conclusions of law are supported by the findings of fact. *In re P.M.*, 169 N.C. App. 423, 424, 610 S.E.2d 403, 404 (2005).

With respect to the "incident at the motel," DSS presented evidence through the testimony of Timothy Mack, the front desk clerk who found D.C. alone in a room at the Super 8 motel, and Dale Mills, the detective who investigated Mack's report. Mack testified that he received a complaint from a guest, who stated that "there'd been a baby screaming and crying for like ten or fifteen minutes" in room 214 next door. Mack went upstairs and listened at the door of room 214, where he heard the baby crying. He then walked back to the front desk and tried to call room 214, but no one answered. Mack returned to room 214 and knocked on the door. Again, no one answered. Finally, Mack called his manager who told him to enter the room.

When Mack entered room 214 he found D.C. sitting alone on the floor beside the door crying. Mack checked to make sure no one else was in the room and then took D.C. to the front desk, where he called the police. Mack testified that approximately thirty minutes elapsed between the time he received the complaint and the time

he called the police. Respondent did not return to the motel before the police arrived.

Mack also testified that he could see the front lobby from his work station and that no one was there at the time of the complaint. He further stated that he could see the Coke machine from room 214 and that no one was there either. Room 214 was registered to respondent.

Detective Mills testified that he responded to the Super 8 motel at 4:22 a.m. "in reference to an infant child left unattended in a room there." In the course of his investigation, Detective Mills interviewed respondent. Respondent told Detective Mills that she left D.C. asleep on the hotel bed while she went downstairs to visit with her cousin in the lobby.

Respondent testified that she left D.C. with the lady in the room next door to hers. She further testified that she did not know the lady's name at the present time and she was unsure whether she knew the lady's name at the time she left D.C. in the lady's care. When asked why she thought she could trust this lady, respondent replied, "because someone else told me."

Based upon this and other evidence, the trial court found:

10. On or about December 17, 2004, the respondent mother had left D.C. in a Super 8 Motel room alone for no less than thirty minutes around 4:00 a.m. in the morning. The case was substantiated for neglect and was transferred to Case Management/ Case Planning.

11. Timothy Mack, the desk clerk at Motel 6 [sic] was at the front desk when he received a telephone call from a guest that a child was constantly crying and had been crying for approximately ten to fifteen minutes.

12. Timothy Mack went to the room of respondent mother and began knocking on the door and no one answered. Mr. Mack contacted the manager and was informed that he was to let himself in the room. Upon entering the room Mr. Mack found D.C. alone and crying.

13. The Greenville Police Department was called and a referral was made to Child Protective Services. Shortly after the police arrived [respondent] returned to the motel.

**IN RE D.C., C.C.**

[183 N.C. App. 344 (2007)]

We conclude that the findings of fact listed above are supported by clear and convincing evidence. Further, these findings are sufficient to support the trial court's conclusion that D.C. is a neglected juvenile "in that [D.C. was] exposed to an injurious environment that put [her] in an unacceptable risk of harm and emotional distress."

Here, the trial court found that respondent left her sixteen month old daughter alone in a Super 8 motel room for more than thirty minutes at four o'clock in the morning. The trial court's findings related to this incident, standing alone, are sufficient to support the conclusion that D.C. is a neglected juvenile as defined by N.C. Gen. Stat. § 7B-101(15). For this reason, we do not consider respondent's argument that the remaining findings are not supported by clear and convincing evidence. This assignment of error is overruled.

## IV. Reasonable Efforts

[3] Respondent argues that the trial court erred by failing to order DSS to provide services to assist respondent in completing the tasks necessary for reunification. We disagree.

N.C. Gen. Stat. § 7B-507(a)(3) provides that a disposition order "[s]hall contain findings as to whether a county department of social services should continue to make reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined or determines . . . that such efforts are not required or shall cease." "Reasonable efforts" means "the diligent use of preventive or reunification services by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-101(18) (2005). Thus, when the court orders DSS to "make reasonable efforts," the court orders DSS to diligently "use . . . preventive or reunification services" by definition.

Here, the trial court found:

73. D.C. was removed from her mother's home September 13, 2005 and she has not made substantial progress since that time towards providing a safe environment that is in the best interests of D.C.

74. It is in the best interest of D.C. that guardianship be granted to James and Angeline Phillips.

. . . .

IN RE D.C., C.C.

[183 N.C. App. 344 (2007)]

76. Pitt County DSS made reasonable efforts to prevent and eliminate the need for placement of the juveniles outside the home of respondent mother including daycare for the children and random drug screens for respondent mother.

. . . .

78. The best permanent plan for C.C. is reunification with respondent mother and there is a reasonable possibility of reunification with C.C. in that he has not been in custody as long as .D.C.

79. Pitt county DSS shall continue with reasonable efforts towards reuniting the mother with C.C. including, but not limited to mental health referrals if necessary, referrals for anger management, referral for vocational rehabilitation, visitation, and monitoring visitation.

The court also made the following conclusions of law:

6. That petitioner made reasonable efforts to eliminate the need for the placement of D.C. outside the home but that further efforts at reunification are not reasonably likely to succeed and are not in the best interests of the juvenile.

7. That the permanent plan for C.C. should be reunification with respondent mother and Pitt County DSS should continue with reasonable efforts towards reunification.

Findings of fact 73, 74, 76 and conclusion of law 6 satisfy the requirements of N.C. Gen. Stat. § 7B-507(a) with respect to D.C. Because the court has determined that continued efforts to reunify D.C. with respondent are not likely to succeed and are not in D.C.'s best interests, DSS is relieved of its statutory responsibility to "use . . . preventive or reunification services" to accomplish that goal.

Findings of fact 76, 78, 79, and conclusion of law 7 satisfy the requirements of N.C. Gen. Stat. § 7B-507(a) with respect to C.C. Because the court has found that DSS should continue to make reasonable efforts to reunify C.C. with respondent, DSS must "use . . . preventive or reunification services" to accomplish this goal. No further specific findings of fact are required.

This assignment of error is overruled.

**IN RE D.C., C.C.**

[183 N.C. App. 344 (2007)]

## V. Guardianship

**[4]** Respondent argues that the trial court erred by appointing James and Angeline Phillips as D.C.'s permanent legal guardians in a disposition order. We agree.

The court may enter findings ceasing reunification "[i]n any order placing a juvenile in the custody or placement responsibility of a county department of social services" including a disposition order; however, "[a]t any hearing at which the court finds that reasonable efforts to eliminate the need for the juvenile's placement are not required or shall cease, the court <u>shall</u> direct that a permanency planning hearing as required by N.C. Gen. Stat. § 7B-907 be held within 30 calendar days after the date of the hearing and, if practicable, shall set the date and time for the permanency planning hearing." N.C. Gen. Stat. § 7B-507 (2005) (emphasis added). "The purpose of a permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a) (2005). Section 7B-907 sets forth specific rules for giving "notice of the hearing and its purpose to the parent." "At the conclusion of the hearing, if the juvenile is not returned home, the court <u>shall</u> consider" six statutorily enumerated criteria and "make written findings regarding those that are relevant." N.C. Gen. Stat. § 7B-907(b) (emphasis added). "[T]he judge <u>shall</u> [also] make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(c) (emphasis added).

Following a permanency planning hearing, the trial court "may appoint a guardian of the person for the juvenile pursuant to N.C. Gen. Stat. § 7B-600." N.C. Gen. Stat. § 7B-907(c). "If the court . . . appoints an individual guardian of the person pursuant to N.C. Gen. Stat. § 7B-600, the court <u>shall</u> verify that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. § 7B-907(f) (emphasis added).

Here, the trial court adjudicated D.C. to be neglected, entered a disposition ceasing reunification efforts, and awarded permanent legal guardianship of D.C. to James and Angeline Phillips in a single order following hearings on adjudication and disposition. The adjudication and disposition hearings were held more than a year after DSS filed its original petition, following numerous orders continuing non-

secure custody without adjudicating the merits of the DSS petition. No permanency planning hearing and no review hearings were held in this matter.

The trial court's findings ceasing reunification efforts and awarding guardianship are set forth in findings of fact 73, 74, 76 and conclusion of law 6. Based on these findings and conclusions of law, the trial court ordered the following disposition:

> 5. That is in the best interest of D.C. that guardianship be granted to James and Angeline Phillips.

> 6. That James and Angeline Phillips are authorized to consent to and authorize any routine emergency medical, psychological, psychiatric, educational or remedial services for D.C.

> 7. That visitation with D.C. shall be at the discretion of Angeline and James Phillips.

> . . . .

> 22. That Guardian Ad Litem and the Department of Social Services and the attorneys are relieved of further responsibility in the D.C. matter.

Because N.C. Gen. Stat. §§ 7B-507 and 907 do not permit the trial court to enter a permanent plan for a juvenile during disposition, respondent did not have statutorily required notice that the trial court would consider a permanent plan for D.C., and the trial court did not make findings mandated by sections 7B-907(b), (c), and (f), we reverse that portion of the trial court order awarding guardianship to James and Angeline Phillips. We remand this matter to District Court, Pitt County for a permanency planning hearing and entry of a permanency planning order containing all findings of fact required by section 7B-907.

## VI. Conclusion

For the reasons stated above, we reverse those portions of the trial court order which (1) adjudicate C.C. to be a neglected juvenile and (2) award guardianship of D.C. to James and Angeline Phillips. We remand this matter to District Court, Pitt County for (1) adjudication and disposition hearings on DSS's petition alleging C.C. to be a dependent juvenile and (2) a permanency planning hearing to develop a permanent plan for D.C. With respect to all other matters considered by this Court on appeal, the trial court order is affirmed.

AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.

Judges JACKSON and STEPHENS concur.