An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e    P r o c e d u r e .

NO. COA13-847

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

IN THE MATTER OF:

B.W., K.T., and A.W.                    Durham County
                                       Nos. 12 JA 174—76

Appeal by respondent from order entered 2 May 2013 by Judge William A. Marsh, III, in Durham County District Court. Heard in the Court of Appeals 13 January 2014.

> *Assistant Durham County Attorney Robin K. Martinek for petitioner-appellee Durham County Department of Social Services.*

> *Edward Eldred, Attorney at Law, PLLC, by Edward Eldred, for respondent-appellant father.*

> *Troutman Sanders LLP, by Gavin B. Parsons, for guardian ad litem.*

BRYANT, Judge.

Where respondent received adequate notice of a permanency planning hearing to be conducted and the trial court then combined an initial dispositional hearing with a permanency

planning hearing, the trial court did not err pursuant to our Juvenile Code.

Respondent-father appeals from the trial court's adjudication and disposition order in which Billy, Karl, and Andy[1] were adjudicated neglected and Billy and Karl were adjudicated abused. The Durham County Department of Social Services ("DSS") became involved with this family on 29 July 2011 when it received a report that respondent physically abused Billy and Karl, and hit and beat the children's mother in the children's presence. On 24 August 2011, DSS substantiated the case for improper discipline and neglect. On 7 September 2011, the children were placed in the home of the maternal grandparents as part of a safety plan with DSS. The children have been in the home of their maternal grandparents since that date.

The mother obtained a domestic violence protective order ("DVPO") against respondent in October 2011. However, within weeks the mother had the DVPO set aside because she was "working things out" with respondent. Respondent and the mother were referred to services related to parenting classes, psychological evaluations, and individual and couples therapy. Respondent was

---

[1] Billy, Karl and Andy are pseudonyms used to protect the identities of the juveniles pursuant to N.C.R. App. P. 3.1(b).

also referred to services for anger management. Respondent and the mother completed parenting classes but made minimal progress in completing the other services.

On 30 March 2012, DSS received another report in which the children disclosed several incidents of abuse by respondent. The reporter stated that the children disclosed that respondent "held their heads under water and has hit them in their faces several times." DSS substantiated the abuse.

On 14 September 2012, DSS filed a juvenile petition alleging all three children were neglected. The petition also alleged that Billy and Karl were abused. The trial court conducted an adjudication hearing on 15 and 19 February and 12 March 2013. At the conclusion of the hearing, the trial court determined that the children were abused and neglected. The trial court then conducted a combined disposition and permanency planning hearing. On 2 May 2012, the trial court entered its order adjudicating all three children neglected, and Billy and Karl abused. The trial court awarded guardianship of Billy and Andy to their maternal grandparents, and guardianship of Karl to his paternal grandmother. Respondent appeals.[2]

---

[2] The order also terminated the parental rights of the juveniles' mother and L.T., the legal husband of the mother and legal father to Karl and Andy, but neither parent is a party to this

_____

As an initial matter, we address the issue of whether respondent has standing to appeal as to Karl and Andy. The mother's husband, L.T., is the legal father of Karl and Andy. Therefore, DSS argues that respondent is neither a parent nor guardian of Karl and Andy. Similarly, the guardian ad litem ("GAL") argues that respondent is neither a parent, guardian, or custodian of either child.

Under the Juvenile Code, proper parties to appeal are as follows: "A parent, a guardian appointed under G.S. 7B-600 or Chapter 35A of the General Statutes, or a custodian as defined in G.S. 7B-101 who is a nonprevailing party." N.C. Gen. Stat. § 7B-1002(4) (2011). A custodian is defined in part as "a person, other than parents or legal guardian, who has assumed the status and obligation of a parent without being awarded the legal custody of a juvenile by a court." N.C. Gen. Stat. § 7B-101(8) (2011). In this case, prior to their removal, Karl and Andy resided with their mother and respondent. In fact, DSS alleged in the juvenile petition that respondent "acted as a parent or caretaker for all the children." Thus, we conclude that

_____

appeal.

respondent was a custodian of Karl and Andy, and therefore has standing to appeal pursuant to section 7B-1002(4).

On appeal, respondent argues that "[i]t is readily apparent under [the Juvenile Code] that the trial court is not authorized to combine a permanency planning hearing with an initial dispositional hearing and that, consequently, the trial court is not authorized to adopt and implement a permanent plan as an initial disposition." Respondent contends this Court previously reached this conclusion in *In re D.C.*, 183 N.C. App. 344, 644 S.E.2d 640 (2007).

> Section 7B-907 [of the Juvenile Code] sets forth specific rules for giving "notice of the hearing and its purpose to the parent." "At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider" six statutorily enumerated criteria and "make written findings regarding those that are relevant."

*Id*. at 355, 644 S.E.2d at 646 (quoting N.C. Gen. Stat. § 7B-907(b)). In *D.C.*, this Court reversed the portion of the trial court's order awarding guardianship because the respondent did not receive the statutorily required notice and the trial court failed to make the findings mandated by N.C.G.S. § 7B-907. Moreover, in *In re S.C.R.*, __ N.C. App. __, 718 S.E.2d 709 (2011), "this Court has previously held that 'N.C. Gen.[]Stat. §§ 7B-507 and 907 do not permit the trial court to enter a

permanent plan for a juvenile during disposition' without the statutorily required notice for a permanency planning hearing." *Id*. at __, 718 S.E.2d at 713 (quoting *In re D.C.*, 183 N.C. App. 344, 356, 644 S.E.2d 640, 646 (2007)). The Court in *S.C.R.* held that it was error for the trial court to authorize the permanent plan at disposition without the statutorily required notice. *Id.*

In present case, the "Notice of Hearing" provided: "Following adjudication, the matter will proceed to disposition and permanency planning hearing for this matter." Thus, the parties received notice as to the permanency planning hearing. In fact, respondent concedes that he received notice as to the permanency planning hearing. Respondent further concedes that the trial court made the findings mandated by N.C.G.S. 7B-907(b). Furthermore, at the conclusion of the permanency planning hearing, the trial court "may appoint a guardian of the person for the juvenile pursuant to G.S. 7B-600 . . . ." N.C. Gen. Stat. § 7B-907(c) (2011). Accordingly, the trial court did not err in adopting and implementing the permanent plan of guardianship at the initial disposition hearing. The trial court's order is affirmed.

Affirmed.

Judges HUNTER, Robert C., and STEELMAN concur.

Report per Rule 30(e).