TYSON, Judge.
 

 *565
 
 Respondent-Father appeals from an order terminating his parental rights to his minor children "Liam" and "Imogen" ("the children").
 
 See
 
 N.C. R. App. P. 3.1(b) (pseudonyms used to protect the identity of the children). The ground or grounds for termination found or asserted by the trial court are either unsupported by the evidence or were not alleged in the petition filed by the Robeson County Department of Social Services ("DSS"). We reverse.
 

 I. Background
 

 The parties stipulated and the trial court found DSS had obtained non-secure custody of the children on 31 October 2014 upon the filing of
 
 *566
 
 a juvenile petition alleging they were neglected. The children were living with their mother and maternal grandmother at the time the petition was filed. Their mother suffers from dementia induced by head trauma and was subsequently admitted into a secure facility at the Greenbrier Nursing Home.
 

 After a hearing on 2 September 2015, the trial court adjudicated the children as dependent juveniles. In its initial dispositional order, the court maintained the children in DSS' custody and granted the agency authority over their foster placements. The court relieved DSS of reunification efforts and changed the placement plan for the children from reunification with the mother to guardianship with a relative.
 

 The court declined to enter a visitation plan for Respondent-Father, after finding the children "have stated they do not want to see their father because they are afraid of him." The court found that Respondent-Father had entered into an Out-of-Home Services Agreement ("OHSA") with DSS on 31 March 2015, to address issues of substance abuse, mental health, and domestic violence, and had requested that his children be returned home to their grandmother.
 

 In March 2016, following a successful home study, the trial court approved a relative placement for the children in Florida with the maternal grandmother's ex-husband and his current wife ("Mr. and Mrs. R."). Mr. and Mrs. R. subsequently asked to adopt the children. After a hearing on 1 February 2017, the court changed the primary permanent plan to adoption with a concurrent plan of guardianship with a relative.
 

 On 16 March 2017, DSS filed a petition to terminate Respondent-Father's and the mother's parental rights in the children ("TPR petition"). The trial court held an evidentiary hearing on 11 January 2018. After receiving testimony from Mr. Locklear, the children's foster care social worker, the trial court found grounds existed to terminate
 
 *508
 
 both parents' rights. The court received additional evidence at disposition and determined that termination of parental rights was in the best interests of the children.
 

 In its written order, the trial court made the following ultimate findings with regard to the grounds for termination of Respondent-Father's parental rights:
 

 85. The alleged father, [Respondent-Father], and any unknown father, have willfully left the children in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under
 
 *567
 
 the circumstances has been made in correcting the conditions that led to the children's removal; has failed to file an affidavit of paternity in a center [sic] registry maintained by the Department of Health and Human Services; [has not] legitimated the juvenile[s] pursuant to provisions of G.S. 49-10, G.S. 49-12.1, or filed a petition for this specific purpose; [has not] legitimated the juveniles by marriage to the mother of the juveniles; has not provided substantial financial support or consistent care with respect to the juveniles and mother; has not established paternity through G.S. 49-14, 110-132, 130A-101, 130A-118, or other judicial proceeding.
 

 Based upon these adjudicatory findings, the court reached the following conclusion of law:
 

 3. That grounds exist based on clear, cogent and convincing evidence, to terminate the parental rights of [Respondent-Father] ... pursuant to North Carolina General Statute's [sic] 7B-1111 in that:
 

 a. That the alleged father, [Respondent-Father], of the children, [Imogen ] and [Liam], born out of wedlock has not prior to filing the petition to terminate his parental rights: (a) married the mother of the children or (b) legitimated the children or (c) provided substantial financial support or consistent care with respect of the children and mother or (d) filed an affidavit of paternity in a central registry maintained by the Department of Health and Human Services or (e) established paternity through G.S. 49-14, 110-132, 130A-101, 130A-118, or other judicial proceeding.
 

 Respondent-Father filed timely notice of appeal from the court's order. Although the order also terminated the mother's parental rights, she is not a party to this appeal.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court from a final order of the district court pursuant to N.C. Gen. Stat. § 7B-1001(a) (2017).
 

 III. Issue
 

 Respondent-Father argues the trial court erred in adjudicating grounds exist to terminate his parental rights under N.C. Gen. Stat. § 7B-1111(a) (2017).
 

 *568
 

 IV. Standard of Review
 

 We review an adjudication under N.C. Gen. Stat. § 7B-1111(a) "to determine 'whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur[.]' "
 
 In re J.M.K.
 
 , --- N.C. App. ----, ----,
 
 820 S.E.2d 106
 
 , 107 (2018) (quoting
 
 In re Oghenekevebe
 
 ,
 
 123 N.C. App. 434
 
 , 435-36,
 
 473 S.E.2d 393
 
 , 395 (1996) ).
 

 V. Failure to Legitimate
 

 Respondent-Father contends the evidence presented at the adjudicatory stage of the hearing and the trial court's evidentiary findings do not establish his failure to legitimate the children. Under N.C. Gen. Stat. § 7B-1111(a)(5), the trial court may terminate a father's parental rights to a child born out-of-wedlock if, prior to the filing of the petition, the father has not done any of the following:
 

 a. Filed an affidavit of paternity in a central registry maintained by the Department of Health and Human Services; provided, the petitioner or movant shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and the Department's certified reply shall be submitted to and considered by the court.
 

 b. Legitimated the juvenile pursuant to provisions of G.S. 49-10, G.S. 49-12.1, or filed a petition for this specific purpose.
 

 *509
 
 c. Legitimated the juvenile by marriage to the mother of the juvenile.
 

 d. Provided substantial financial support or consistent care with respect to the juvenile and mother.
 

 e. Established paternity through G.S. 49-14, 110-132, 130A-101, 130A-118, or other judicial proceeding.
 

 Id
 
 . "The petitioner bears the burden of proving a father has failed to take any of the four actions enumerated under N.C. Gen. Stat. § 7B-1111(a)(5)."
 
 In re I.S.
 
 ,
 
 170 N.C. App. 78
 
 , 88,
 
 611 S.E.2d 467
 
 , 473 (2005). The trial court "must make specific findings of fact as to [each] subsection[.]"
 

 Id.
 

 We agree with Respondent-Father that DSS adduced no evidence to support a finding that the children were born out-of-wedlock or that,
 
 *569
 
 at the time its petition was filed on 16 March 2017, Respondent-Father had not filed an affidavit of paternity in a central registry maintained by the Department of Health and Human Services; legitimated or filed a petition to legitimate the children pursuant to
 
 N.C. Gen. Stat. §§ 49-10
 
 , -12.1; legitimated the children by marriage to the mother; or established paternity through a judicial proceeding.
 

 While Mr. Locklear testified Respondent-Father had paid no child support or provided gifts or clothes for the children since their arrival in foster care, this minimal proffer does not suffice to meet DSS' burden of proof to support an adjudication under N.C. Gen. Stat. § 7B-1111(a)(5).
 
 See
 

 J.M.K.
 
 , --- N.C. App. at ----,
 
 820 S.E.2d at 108-09
 
 .
 

 No evidence in the record supports the trial court's adjudication under N.C. Gen. Stat. § 7B-1111(a)(5). We need not address Respondent-Father's exceptions to the trial court's fact-finding in support of this ground. The adjudication is reversed.
 
 See
 

 id
 
 .
 

 VI. Willful Lack of Progress
 

 Respondent-Father also challenges the trial court's statement in Finding 85 that he "willfully left the children in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made in correcting the conditions that led to the children's removal[,]" insofar as this statement constitutes a conclusion of law of the existence of a ground for terminating his parental rights under N.C. Gen. Stat. § 7B-1111(a)(2).
 
 Cf. generally
 

 Westmoreland v. High Point Healthcare, Inc.
 
 ,
 
 218 N.C. App. 76
 
 , 79,
 
 721 S.E.2d 712
 
 , 716 (2012) ("The labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review.").
 

 Respondent-Father contends the court's Conclusion of Law 3 demonstrates that it adjudicated just a single ground for terminating his parental rights under N.C. Gen. Stat. § 7B-1111(a)(5) and "did not actually rely on the grounds in N.C. Gen. Stat. § 7B-1111(a)(2) [.]" He further asserts that any adjudication under N.C. Gen. Stat. § 7B-1111(a)(2) would be "improper ..., because [DSS'] TPR petition did not allege this as a ground for terminating his rights."
 

 DSS argues Finding 85 "recite[s] the language of" N.C. Gen. Stat. § 7B-1111(a)(2), and that the court's failure to repeat this language in Conclusion of Law 3 amounts to "a non-prejudicial clerical error." We need not resolve whether the court adjudicated the existence of § 7B-1111(a)(2) as a ground for termination. The record shows and we
 
 *570
 
 conclude DSS' TPR petition failed to allege that Respondent-Father did not make reasonable progress as a ground for terminating his parental rights.
 

 Under N.C. Gen. Stat. § 7B-1104(6) (2017), a petition to terminate parental rights must state " '[f]acts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist.' "
 
 In re Humphrey
 
 ,
 
 156 N.C. App. 533
 
 , 539,
 
 577 S.E.2d 421
 
 , 426 (2003) (quoting statute). This Court previously stated: "[w]hile there is no requirement that the factual allegations be exhaustive or extensive, they must put a party on notice as to
 
 what acts, omissions or conditions are at issue
 
 ."
 
 In re Hardesty
 
 ,
 
 150 N.C. App. 380
 
 , 384,
 
 563 S.E.2d 79
 
 , 82 (2002) (emphasis supplied).
 

 In the case of
 
 In re B.L.H.
 
 , this Court further explained that,
 

 [w]here the factual allegations in a petition to terminate parental rights
 
 do not refer to
 

 *510
 

 a specific statutory ground for termination
 
 , the trial court may find any ground for termination under N.C.G.S. § 7B-1111 as long as the factual allegations in the petition give the respondent sufficient notice of the ground. However,
 
 where a respondent lacks notice
 
 of a possible ground for termination, it is error for the trial court to conclude such a ground exists.
 

 190 N.C. App. 142
 
 , 147,
 
 660 S.E.2d 255
 
 , 257-58,
 
 aff'd per curiam
 
 ,
 
 362 N.C. 674
 
 ,
 
 669 S.E.2d 320
 
 (2008) (emphasis supplied). In relevant part, N.C. Gen. Stat. § 7B-1111(a)(2) authorizes the termination of parental rights upon a finding that
 

 [t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.
 

 N.C. Gen. Stat. § 7B-1111(a)(2).
 

 DSS' TPR petition alleges thirteen numbered paragraphs, setting forth the procedural history of the case, demonstrating the basis for DSS' standing to seek termination under N.C. Gen. Stat. § 7B-1103(a)(3) and satisfying the other formal requirements for a petition in N.C. Gen. Stat. § 7B-1104(1) - (7) (2017). Paragraph 3 alleges that "a Juvenile Petition and Non-Secure Custody Order were filed on October 30, 2014, alleging that [Imogen and Liam] are neglected juveniles...." Paragraph
 
 *571
 
 4 alleges that the children were adjudicated dependent on 2 September 2015. Paragraph 5(a) alleges that DSS "has been awarded custody of the minor children ... by a court of competent jurisdiction" as shown by an order purportedly attached as an exhibit to the petition, but which is not included in the record on appeal.
 

 Paragraph 12 of the TPR petition identifies the specific factual bases alleged by DSS for terminating the parents' rights, as follows:
 

 12.
 
 Facts sufficient to warrant a determination that one or
 

 more grounds for terminating parental rights exist under N.C.G.S. 7B-1111 are as follows
 
 :
 

 a) That the alleged father ... of the children born out of wedlock has not, prior to the filing of a petition or motion to terminate his parental rights, done any of the following: (a) filed an affidavit of paternity in a central registry maintained by the Department of Health and Human Services (b) Legitimated the juvenile[s] pursuant to provisions of N.C.G. S. 49-10, N.C. G. S. 49-12.1, or filed a petition for this specific purpose (c) Legitimated the juvenile[s] by marriage to the mother of the juveniles' [sic] (d) Provided substantial financial support or consistent care with respect to the juveniles' [sic] and mother (e) Established paternity through N.C.G.S. 49-14, 110-132, 130A-101, 130A-118, OR other judicial proceeding.
 

 b) The mother ... is incapable of providing for the proper care and supervision of the children, such that the children are dependent children, and there is a reasonable probability that such incapability will continue for the foreseeable future.
 

 (Emphasis supplied).
 
 See
 
 N.C. Gen. Stat. § 7B-1111(a)(5), (6) (2017).
 

 Paragraph 12, and the body of the TPR petition more generally, make no reference to Respondent-Father's willful failure to make reasonable progress in correcting the conditions that led to the children's removal from the mother's care. This petition cannot be said to provide "sufficient notice" to Respondent-Father of violation of failure to comply with N.C. Gen. Stat. § 7B-1111(a)(2) as a potential ground to terminate of his parental rights.
 
 In re B.L.H.
 
 ,
 
 190 N.C. App. at 147
 
 ,
 
 660 S.E.2d at 257
 
 .
 

 DSS directs this Court to the petition's Exhibit D, a fifteen-page affidavit signed by Mr. Locklear. Exhibit D is incorporated by reference into the body of the petition as follows:
 

 *572
 
 10. That the last known address of the mother ... is as stated above, the efforts of the Petitioner to unite the juveniles' [sic] with their mother are as set out in Affidavit of Darryl Locklear, Social Worker III, a copy of which is attached to this original Petition marked Exhibit "D", to be taken as part of this paragraph as if fully set out herein.
 

 *511
 
 11. That the last known address of the alleged father, [Respondent-Father], is as stated above, the efforts of the Petitioner to unite the juveniles' [sic] with their alleged father are as set out in Affidavit of Darryl Locklear, Social Worker III, a copy of which is attached to this original Petition marked Exhibit "D", to be taken as part of this paragraph as if fully set out herein.
 

 N.C. Gen. Stat. § 7B-1104(3) provides that, if the names or addresses of a juvenile's parents are unknown, a petition for termination of parental rights "shall set forth with particularity the petitioner's ... efforts to ascertain the ... whereabouts of the parent or parents."
 

 Id.
 

 N.C. Gen. Stat. § 7B-1104(3) further provides that "[t]he information may be contained in an affidavit attached to the petition ... and incorporated by reference."
 

 Id.
 

 Mr. Locklear's affidavit details his activities related to the family's case between November 2014 and January 2017. Although dozens of the affidavit's 152 numbered paragraphs make some reference to Respondent-Father, the great majority do not. The affidavit recounts (1) Mr. Locklear's efforts in developing Respondent-Father's OHSA and contacting or attempting to contact Respondent-Father by mail and by phone; (2) Respondent-Father's statements to Mr. Locklear; (3) Respondent-Father's absence from, or attendance of, a particular meeting or hearing; and (4) statements about Respondent-Father made by the maternal grandmother, Respondent-Father's therapist, and the children's therapist. The affidavit concludes with the following averments about Respondent-Father:
 

 150. The father ... refuses to make regular contact with the agency. The social worker is unable to assess all his needs but is aware of domestic violence issues, substance abuse concerns and issues with parenting.
 

 151. The father did meet with worker and agreed to complete substance abuse assessment/counseling, domestic violence assessment/counseling and mental health assessment/counseling.
 

 *573
 
 In the case of
 
 In re D.C.
 
 ,
 
 183 N.C. App. 344
 
 ,
 
 644 S.E.2d 640
 
 (2007), this Court addressed the sufficiency of the allegations in DSS' petition in a juvenile abuse, neglect, or dependency proceeding. In
 
 D.C.
 
 , DSS filed a petition alleging that D.C. was a neglected juvenile based upon,
 
 inter alia
 
 , the respondent leaving the sixteen-month-old child "unsupervised in a motel room where she was later found by a motel employee."
 
 D.C.
 
 ,
 
 183 N.C. App. at 347
 
 ,
 
 644 S.E.2d at 641
 
 . Before the petition was heard, the respondent gave birth to C.C.
 
 Id.
 
 at 348,
 
 644 S.E.2d at 642
 
 . When C.C. was two days old, DSS filed a petition alleging she was a dependent juvenile.
 

 Id.
 

 As is common in abuse, neglect, and dependency proceedings, DSS used a form petition and checked the box indicating an allegation of dependency.
 
 Id
 
 . at 350,
 
 644 S.E.2d at 643
 
 . In an attachment to the petition,
 

 DSS incorporated verbatim all the allegations made with respect to respondent's care of D.C. and also alleged that respondent (1) received sporadic prenatal care for C.C., (2) refused to divulge the identity of C.C.'s father, (3) does not possess a crib, diapers, clothes, or formula for C.C., and (4) is incapable of providing care for a newborn.
 

 Id
 
 . at 348,
 
 644 S.E.2d at 642
 
 . The trial court subsequently adjudicated D.C. and C.C. to be neglected juveniles.
 

 Id.
 

 On appeal, this Court affirmed D.C.'s adjudication as neglected, based upon the respondent having left the child unattended in a hotel room.
 
 Id.
 
 at 353,
 
 644 S.E.2d at 645
 
 . However, this Court reversed C.C.'s adjudication as neglected, and concluded the allegations in the petition were insufficient under the precedent of
 
 Hardesty
 
 to give the respondent notice of an allegation of neglect in addition to the explicit allegation of dependency made in the petition.
 
 Id
 
 . at 350,
 
 644 S.E.2d at
 
 643 (citing
 
 Hardesty
 
 ,
 
 150 N.C. App. at 384
 
 ,
 
 563 S.E.2d at
 
 82 ).
 

 The Juvenile Code defines a neglected juvenile,
 
 inter alia
 
 , as one who "does not receive proper care" from her parent and expressly makes "relevant" to the neglect inquiry the fact that the "juvenile lives in a home ... where another juvenile has been
 
 *512
 
 subjected to ... neglect by an adult who regularly lives in the home." N.C. Gen. Stat. § 7B-101(15) (2017). Nevertheless, this Court in
 
 D.C.
 
 deemed the allegations in the petition's attachment, which included the respondent's neglect of D.C., C.C.'s lack of regular prenatal care, and the respondent's lack of basic items necessary for newborn C.C.'s care, as "insufficient to put respondent on notice that both dependency
 
 and neglect
 
 of C.C. would be at
 
 *574
 
 issue during the adjudication hearing."
 
 D.C.
 
 ,
 
 183 N.C. App. at 350
 
 ,
 
 644 S.E.2d at 643
 
 . This Court further
 

 emphasize[d] that this holding is not based on DSS's mere failure to "check the box" for "neglect" on the form petition. While it is certainly the better practice for the petitioner to "check" the appropriate box on the petition for each ground for adjudication, if the specific factual allegations of the petition are sufficient to put the respondent on notice as to each alleged ground for adjudication, the petition will be adequate. In this case, the box for "neglect" was not checked,
 
 and
 
 the factual allegations, while supporting the claim of dependency, did not
 
 clearly allege
 
 the separate claim of neglect.
 

 Id
 
 . (emphasis original).
 

 This Court's holding in
 
 D.C.
 
 supports our conclusion that DSS' TPR petition failed to provide adequate notice to Respondent-Father that his failure to make reasonable progress under N.C. Gen. Stat. § 7B-1111(a)(2) was at issue at the termination hearing. The body of the petition designates specific "[f]acts sufficient to warrant a determination that one or more grounds for terminating parental rights exist under N.C. Gen. Stat. 7B-1111" and then lists allegations comprising the grounds for termination under N.C. Gen. Stat. § 7B-1111(a)(5).
 

 While the petition incorporates Mr. Locklear's affidavit by reference, it characterizes this attachment as an account of "the efforts of the Petitioner to unite the juveniles' [sic] with their mother" and Respondent-Father. The affidavit makes no mention of Respondent-Father's "progress," much less his lack of "reasonable progress under the circumstances ... in correcting those conditions which led to the removal of the juvenile[s]" from the mother's home. N.C. Gen. Stat. § 7B-1111(a)(2). A fair review of the TPR petition suggests the affidavit was intended to satisfy the requirements of N.C. Gen. Stat. § 7B-1104(3), rather than to state the facts supporting grounds for termination under N.C. Gen. Stat. § 7B-1104(6).
 

 VII. Conclusion
 

 Respondent-Father was not provided prior notice that N.C. Gen. Stat. § 7B-1111(a)(2) was a potential ground for terminating his parental rights. The trial court erred to the extent it relied upon this ground.
 
 See
 

 J.M.K.
 
 , --- N.C. App. at ----,
 
 820 S.E.2d at
 
 107-08 ;
 
 B.L.H.
 
 ,
 
 190 N.C. App. at 148
 
 ,
 
 660 S.E.2d at 258
 
 . In the absence of findings of facts supporting any valid adjudication
 
 *575
 
 of Respondent that grounds exist to terminate his parental rights under N.C. Gen. Stat. § 7B-1111(a), the trial court's order is reversed.
 
 It is so ordered.
 

 REVERSED.
 

 Judges CALABRIA and ZACHARY concur.