IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-114

Filed 19 December 2023

Cleveland County, Nos. 21-JA-13-17

In re: M.M., E.M., J.M., S.M., C.M.

Appeal by Respondent-Father from order entered 28 September 2022 by Judge
Justin K. Brackett in Cleveland County District Court. Heard in the Court of Appeals
28 November 2023.

> *Charles E. Wilson, Jr., for Petitioner-Appellee Cleveland County Department of
> Social Services.*
>
> *Michelle FormyDuval Lynch for Guardian ad Litem.*
>
> *Richard Croutharmel for Respondent-Appellant Father.*

COLLINS, Judge.

Respondent-Father appeals from the trial court's order adjudicating his minor
children abused and neglected. Father argues that the trial court lacked subject
matter jurisdiction to adjudicate the children abused and that he received ineffective
assistance of counsel because his attorney failed to object to certain testimony at trial.
We affirm.

## I. Background

Father and Mother were married on 26 February 2010 and separated on 13

August 2020.[1]  Father and Mother share five children together: Megan, Evan, Jade, Stella, and Chloe.[2]  The trial court entered an order on 26 October 2020 granting Father temporary primary physical custody of the children and awarding Mother visitation.

The Cleveland County Department of Social Services ("DSS") filed a juvenile petition on 19 February 2021, alleging that all five children were abused and neglected.  The petition alleged, in part:

> There is an ongoing custody battle between the parents and every time there is a court date for custody, dad starts coaching the children and making false reports to Law Enforcement and DSS against the mother.  Prior reports were made by dad and were unfounded.  Dad is very possessive of the children and wants to keep them away from mom. Law Enforcement reports were made that mom choked her child [Megan].  [Megan] was interviewed, she said that mom grabbed her by throat.  There was no evidence of abuse on any part of her body.  [Megan] was very robotic with her answers and all of the kids are when speaking with them. . . .
>
> . . . .
>
> . . . . The Department is very concerned about the safety and emotional well-being of [the children] under the care and supervision of their parents.  The children are very sad, withdrawn emotionally, continues to have unexplained marks and bruises. . . .

An order for nonsecure custody was entered that same day.

DSS filed a supplemental juvenile petition on 25 August 2021, alleging that

---

[1] Mother is not a party to this appeal.

[2] We use pseudonyms to protect the identities of the children.

Father had sexually abused Megan, Jade, Stella, and Chloe. The supplemental petition alleged, in relevant part:

> [DSS] accepted another report on May 17, 2021 which alleged possible sexual abuse of [Megan] by her father . . . . The report stated that [Megan] had disclosed that her father tickles her in places she doesn't like, and that [Megan] had stated that she did not want to return home due to her dad tickling her.
>
> . . . . [Megan] disclosed to the social worker that she did not want to return to her father's home for various reasons, including being tickled in places she didn't like. [Megan] shared with [the social worker] that she was being tickled by her father on her inner thigh near her vagina.
>
> . . . . All five children completed a Child Medical Exam (CME) as well as forensic interviews. During the interviews, [Stella, Chloe, and Jade] each disclosed being touched on their vagina by their father . . . .

On 28 September 2022, the trial court entered an order adjudicating all five children abused and neglected and concluding, in relevant part:

> 3. That the juveniles [Megan, Jade, Chloe, and Stella] are abused juveniles as defined by N.C.G.S. 7B-101(1)(d) and (e).
>
> 4. That the juvenile [Evan] is an abused juvenile as defined by N.C.G.S. 7B-101(1)(e).
>
> 5. That the juveniles [Megan, Evan, Jade, Chloe, and Stella] are neglected individuals as defined by N.C.G.S. 7B-101(15)(a) and (e) in that the juvenile[s'] parents did not provide the juveniles with proper care, supervision, or discipline; and that the juveniles' parents created or allowed to be created a living environment that was injurious to the juveniles' welfare.

Father appealed.

## II.    Discussion

### A. Subject Matter Jurisdiction

Father first argues that the trial court "lacked subject matter jurisdiction to adjudicate any of the juveniles emotionally abused because DSS had not alleged emotional abuse in either of its juvenile petitions."

Whether a trial court possesses subject-matter jurisdiction is a question of law that we review de novo. *In re A.L.L.*, 376 N.C. 99, 101, 852 S.E.2d 1, 4 (2020). Under de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower court. *In re T.N.G.*, 244 N.C. App. 398, 402, 781 S.E.2d 93, 97 (2015).

"The pleading in an abuse, neglect, or dependency action is the petition." N.C. Gen. Stat. § 7B-401(a) (2021). The petition must contain "allegations of facts sufficient to invoke jurisdiction over the juvenile." *Id.* § 7B-402(a) (2021). "If the allegations are insufficient to put the party on notice as to which alleged grounds are at issue, then the trial court lacks subject matter jurisdiction over the action." *In re K.L.*, 272 N.C. App. 30, 47, 845 S.E.2d 182, 195 (2020) (citations omitted). "While it is certainly the better practice for the petitioner to 'check' the appropriate box on the petition for each ground for adjudication, if the specific factual allegations of the petition are sufficient to put the respondent on notice as to each alleged ground for adjudication, the petition will be adequate." *In re D.C.*, 183 N.C. App. 344, 350, 644 S.E.2d 640, 643 (2007).

The statutory definition of an abused juvenile includes any juvenile whose parent, guardian, custodian, or caretaker "[c]ommits, permits, or encourages the commission of a violation of the following laws by, with, or upon the juvenile: . . . taking indecent liberties with the juvenile[,]" or "[c]reates or allows to be created serious emotional damage to the juvenile; serious emotional damage is evidenced by a juvenile's severe anxiety, depression, withdrawal, or aggressive behavior toward himself or others[.]" N.C. Gen. Stat. § 7B-101(1)(d), (e) (2021).

Here, in the juvenile petition, DSS checked the box next to "A. The juvenile is an ABUSED JUVENILE, in that: . . . ." Directly below, DSS checked the box next to the following allegations: "the juvenile's parent, guardian, custodian, or caretaker has created or allowed to be created a substantial risk of serious physical injury to the juvenile by other than accidental means" and "the juvenile's parent, guardian, custodian, or caretaker has used or allowed to be used upon the juvenile cruel or grossly inappropriate devices or procedures to modify behavior." DSS also attached additional pages to the juvenile petition detailing the following facts supporting the allegations:

> The reporter states to have been involved with [the family] since last year and is very concerned about the physical and emotional well- being of the children. There is an ongoing custody battle between the parents and every time there is a court date for custody, dad starts coaching the children and making false reports to Law Enforcement and DSS against the mother. Prior reports were made by dad and were unfounded. Dad is very possessive of the children and wants to keep them away from mom. Law

Enforcement reports were made that mom choked her child [Megan]. [Megan] was interviewed, she said that mom grabbed her by throat. There was no evidence of abuse on any part of her body. [Megan] was very robotic with her answers and all of the kids are when speaking with them. They seem to be coached, withdrawn, seems very depressed, no eye contact and no affect. . . . Reporter is concerned that dad keeps putting these kids through this. Dad encourages the kids to run away whenever they are visiting with their mother and also to take mom's tablet or phone, lock themselves in the bathroom and read him the text messages from other people. The children are seen by a therapist virtually and dad never leaves them alone with the therapist. . . .

. . . .

. . . . The Department is very concerned about the safety and emotional well-being of [the children] under the care and supervision of their parents. The children are very sad, withdrawn emotionally, continues to have unexplained marks and bruises. . . .

In the supplemental juvenile petition, DSS checked the box next to "A. The juvenile is an ABUSED JUVENILE, in that: . . . ." Directly below, DSS checked the box next to the following allegation: "the juvenile's parent, guardian, custodian, or caretaker has committed, permitted, or encouraged the commission of a sex or pornography offense by, with, or upon the juvenile in violation of the criminal law." DSS also attached an additional page to the supplemental juvenile petition detailing the following facts supporting the allegation:

All five children completed a Child Medical Exam (CME) as well as forensic interviews. During the interviews, [Stella, Chloe, and Jade] each disclosed being touched on their vagina by [Father]. [Megan] disclosed that her father tickled her inside of her inner [thigh] near "where she uses

the restroom." The Child Medical Exam report listed high concerns that [Megan, Jade, Chloe, and Stella] have been sexually abused, emotionally abused, physically abused and neglected . . . . The Child Medical Exam reported for [Evan] listed high concerns for [Evan] having been emotionally abused, physically abused and neglected as well.

Father argues that, because DSS did not check the box on either petition next to the specific allegation that "the juvenile's parent, guardian, custodian, or caretaker has created or allowed to be created serious emotional damage to the juvenile[,]" the trial court lacked jurisdiction to adjudicate the children abused under N.C. Gen. Stat. § 7B-101(1)(e). Father's argument lacks merit.

Our case law requires allegations "sufficient to put the respondent on notice as to each alleged ground for adjudication[.]" *In re D.C.*, 183 N.C. App. at 350, 644 S.E.2d at 643. Here, DSS checked the box on both petitions indicating that it was alleging that the children were abused and attached additional pages to the juvenile petitions detailing the facts supporting the allegations. Although DSS did not check the box stating that "the juvenile's parent, guardian, custodian, or caretaker has created or allowed to be created serious emotional damage to the juvenile[,]" the petition contained sufficient factual allegations to put Father on notice as to the alleged abuse. *See id.*; *see also* N.C. Gen. Stat. § 7B-402(a).

Accordingly, the trial court did not lack subject matter jurisdiction to adjudicate the children abused under N.C. Gen. Stat. § 7B-101(1)(e).

## B. Ineffective Assistance of Counsel

Father next argues that he received ineffective assistance of counsel because "his court-appointed trial attorney failed to object to DSS's testimonial evidence that [his] daughters had been sexually abused where the witnesses had not been accepted as experts and where no physical findings supported such conclusions." Father mischaracterizes the challenged testimony, and his argument is without merit.

"In cases where the juvenile petition alleges that a juvenile is abused, neglected, or dependent, the parent has the right to counsel and to appointed counsel in cases of indigency unless that person waives the right." N.C. Gen. Stat. § 7B-602(a) (2021). "A party alleging ineffective assistance of counsel must show that counsel's performance was deficient and the deficiency was so serious as to deprive the party of a fair hearing." *In re L.N.H.*, 382 N.C. 536, 541, 879 S.E.2d 138, 143 (2022) (quotation marks, brackets, and citations omitted). "In order to show deprivation of a fair hearing, the party must prove that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Id.* (quotation marks and citation omitted).

Here, Vanessa Parton, a forensic interviewer, testified that she conducted forensic interviews of Evan, Stella, and Chloe. Parton did not testify at any point that sexual abuse had occurred. Rather, Parton testified, in relevant part, as follows:

> Q. Okay. So, is part of your training -- is part of your training to determine the credibility of the person you're interviewing?

A. That's really not as simple as a "yes" or "no" question.

Do you mind if I expand on that?

Q. Yeah.

A. I give the child an opportunity to express themselves. It's not up to me; it's part of a bigger investigative -- you know, it's part of a bigger investigation. The forensic interview is really just a piece of that investigation. My -- it's not my role to form an opinion on that child's credibility, and there are many factors that play into a child's statement, and their disclosures during the interview.

Q. So, in my questioning today, would it be fair to say, did you believe [Stella] when she said that? Did you find that credible?

Would that be a fair question to ask you as a person testifying today?

A. I don't generally comment on my own personal opinion on their credibility.

Moreover, Dianna Pendleton, a nurse practitioner, testified that she conducted child medical evaluations of each of the children. Pendleton testified, in relevant part:

> Q. Did you reach any type of conclusions or determinations at the end of your exam with regard to the possibility of physical or sexual or emotional abuse?
>
> A. Yes. . . .
>
> . . . .
>
> Q. Will you tell the [c]ourt what those were?
>
> A. Yes. So, with regard to sexual abuse, [Chloe] made statements consistent with sexual abuse during her medical interview. [Chloe] made statements consistent with sexual abuse during her forensic interview with Ms. Parton. There were no physical findings. Based on that history, it was highly concerning that [Chloe] has been sexually abused.

. . . .

Q. And what, if any, conclusions or determinations did you make with regard to [Stella]?

A. So, sexual abuse, I said, "[Stella] made statements consistent with sexual abuse during her medical interview. She made statements consistent with sexual abuse during her forensic interview." And it was highly concerning that she has been sexually abused.

. . . .

Q. Okay. Did you reach any type of conclusions, or have any concerns that you expressed in your report?

A. Yes.

Q. Tell the [c]ourt about those, please.

A. I said that [Megan] made statements consistent with sexual abuse. During her medical interview, she made statements consistent with sexual abuse. During her forensic interview, reportedly made statements consistent with sexual abuse during her forensic interview . . . . I said, "Based on this history, it is highly concerning that she may have been sexually abused."

At no point did Pendleton testify that Megan, Jade, Stella, and Chloe had, in fact, been sexually abused.

Because the challenged testimony was not improper, Father's trial counsel was not deficient by failing to object to the evidence. Accordingly, Father did not receive ineffective assistance of counsel.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's order adjudicating the children abused and neglected.

AFFIRMED.

- 10 -

Judges CARPENTER and WOOD concur.