DAVIS, Judge.
 

 *392
 
 Julie Watkins ("Defendant") appeals from her conviction for misdemeanor child abuse. On appeal, she contends that the trial court erred by denying her motions to dismiss. After careful review, we conclude that Defendant received a fair trial free from error.
 

 Factual Background
 

 The State presented evidence at trial tending to establish the following facts: At approximately 1:30 p.m. on 28 January 2014, Defendant drove with her 19-month-old son, "James,"
 
 [1]
 
 to the Madison County Sheriff's Office to leave money for Grady Dockery ("Dockery"), an inmate in the jail. The temperature at the time was 18 degrees, and it was windy with accompanying sleet and snow flurries.
 

 After parking her SUV, Defendant left James buckled into his car seat in the backseat of the vehicle and went into the Sheriff's Office. While inside, Defendant got into an argument with employees in the front lobby. Detective John Clark ("Detective Clark") was familiar with Defendant based on prior complaints that had been made about Defendant letting her toddler run loose in the lobby and into adjacent offices while she visited inmates in the jail. Detective Clark entered the lobby and told Defendant that by order of Chief Deputy Michael Garrison she was "not supposed to be on the property and that she needed to leave."
 

 Defendant and Detective Clark argued for "several seconds," and then he escorted her to her vehicle in the parking lot. Defendant was inside the building for at least six-and-a-half minutes. Detective Clark testified that from where Defendant was positioned in the lobby she could not see her vehicle, which was parked approximately 46 feet away from the front door.
 

 When Detective Clark was within 10 feet of Defendant's vehicle, he noticed a small child sitting alone in the backseat. Defendant acknowledged that the child was hers. Detective Clark observed that the vehicle
 
 *393
 
 was not running and that the driver's side rear window was rolled more than halfway down. He testified that it was "very, very cold and windy and the snow was blowing." He stated that snow was blowing onto his head, making him "so cold I wanted to get back inside." He noticed that the child, who appeared to be sleeping, had a scarf around his neck. Before walking back into the building, Detective Clark told Defendant to turn on the vehicle and "get some heat on that child."
 

 Defendant was charged with misdemeanor child abuse later that day. She was found guilty of that offense in Madison County District Court on 12 September 2014. She appealed the conviction to Madison County Superior Court for a trial
 
 de novo,
 
 and a jury trial was held on 7 May 2015 before the Honorable J. Thomas Davis. The only witness offered by the State was Detective Clark. At the close of the State's evidence, Defendant moved to dismiss the charge against her based on insufficiency of the evidence, and the trial court denied the motion.
 

 Defendant elected to testify on her own behalf. She stated that throughout the events occurring on 28 January 2014 James was wearing a snowsuit along with mittens, boots, a toboggan, pants, and a sweater. Before going to the Sheriff's Office that afternoon, Defendant drove to a nearby grocery store. She met her father there, and he waited inside her vehicle with James (who was sleeping) while she went into the store for approximately fifteen minutes. The vehicle's engine remained on during this time period, and Defendant described the temperature inside the SUV as "hotter than blazes." Upon Defendant's return to the vehicle, her father left. At that point, she made a last-minute decision to stop at the Sheriff's Office to purchase a calling card for Dockery, who had previously lived with her.
 

 *177
 
 James was still sleeping when they arrived at the Sheriff's Office, so Defendant decided to let him remain in the locked vehicle while she went inside. Based on past experience, she believed it would only take approximately "three or four minutes" to purchase the calling card. Defendant stated that her vehicle's windows were rolled up when she left James asleep in the SUV.
 

 Defendant testified that from where she was standing in the Sheriff's Office she "could look directly into my car and see my kid." She also denied that Detective Clark escorted her out of the building, stating that she left on her own. According to Defendant, Detective Clark followed her outside and screamed at her for two or three minutes, stating at one point: "I'm sick and tired of you coming up here disrespecting my deputies and my staff." Defendant stated that Detective Clark also threatened
 
 *394
 
 to "arrest [her] or serve [her] a warrant" the next time she came to the Sheriff's Office.
 

 At the close of all the evidence, Defendant renewed her motion to dismiss, which was once again denied. The jury found Defendant guilty of misdemeanor child abuse. The trial court sentenced her to 75 days imprisonment, suspended the sentence, and placed her on 12 months supervised probation. Defendant gave oral notice of appeal in open court.
 

 Analysis
 

 The sole issue on appeal is whether the trial court erred in denying Defendant's motions to dismiss. A trial court's denial of a defendant's motion to dismiss is reviewed
 
 de novo.
 

 State v. Smith,
 

 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). On appeal, this Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator[.]"
 
 State v. Fritsch,
 

 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (citation omitted),
 
 cert. denied,
 

 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000).
 

 Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith,
 

 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). Evidence must be viewed in the light most favorable to the State with every reasonable inference drawn in the State's favor.
 
 State v. Rose,
 

 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied,
 

 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995). "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal."
 
 Smith,
 

 300 N.C. at 78
 
 ,
 
 265 S.E.2d at 169
 
 . "The defendant's evidence, unless favorable to the State, is not to be taken into consideration. However, if the defendant's evidence is consistent with the State's evidence, then the defendant's evidence may be used to explain or clarify that offered by the State."
 
 State v. Nabors,
 

 365 N.C. 306
 
 , 312,
 
 718 S.E.2d 623
 
 , 627 (2011) (internal citation and quotation marks omitted).
 

 N.C. Gen.Stat. § 14-318.2(a) provides, in pertinent part, that
 

 [a]ny parent of a child less than 16 years of age ... who inflicts physical injury, or who allows physical injury to be inflicted, or who creates or allows to be created a substantial risk of physical injury, upon or to such child by other than accidental means is guilty of the Class A1 misdemeanor of child abuse.
 

 N.C. Gen.Stat. § 14-318.2(a) (2015).
 

 *395
 
 The State is required to prove only one of the three distinct acts set forth in N.C. Gen.Stat. § 14-318.2(a).
 
 State v. Fredell,
 

 283 N.C. 242
 
 , 244,
 
 195 S.E.2d 300
 
 , 302 (1973). That is, the State must introduce substantial evidence that the parent, by other than accidental means, either (1) inflicted physical injury upon the child; (2) allowed physical injury to be inflicted upon the child; or (3) created or allowed to be created a substantial risk of physical injury.
 

 Id.
 

 The State does not contend that Defendant or anyone else actually inflicted physical injury upon James. Rather, the only question presented in this appeal is whether the State introduced substantial evidence that Defendant created a substantial risk of physical injury to James.
 

 The phrase "substantial risk of physical injury" is not defined in N.C. Gen.Stat. § 14-318.2. Because of the paucity of cases applying
 
 *178
 
 this prong of the statute, Defendant attempts to draw an analogy to cases addressing whether a child was properly adjudicated to be a neglected juvenile under Chapter 7B of the North Carolina General Statutes. She points to several specific cases in which this Court has found parental conduct sufficient to support an adjudication of neglect, arguing that the acts at issue in those cases were more egregious than her conduct here. For example, in
 
 In re D.C.,
 

 183 N.C.App. 344
 
 ,
 
 644 S.E.2d 640
 
 (2007), we held that a mother who left her 16-month-old daughter alone in a motel room for at least 30 minutes at 4:00 a.m. exposed the child to an "unacceptable risk of harm...."
 
 Id.
 
 at 353,
 
 644 S.E.2d at 645
 
 (quotation marks omitted). In another case, this Court held that a parent put her child at substantial risk of harm by abusing alcohol and controlled substances in the child's presence and driving while impaired with the child in the vehicle.
 
 In re D.B.J.,
 

 197 N.C.App. 752
 
 , 755-56,
 
 678 S.E.2d 778
 
 , 781 (2009).
 

 However, while these cases as well as the other cases cited in Defendant's brief illustrate
 
 some
 
 circumstances that can create a substantial risk of harm to a juvenile, they do not resolve the issue presently before us-that is, whether the State's evidence here was sufficient to raise a jury question regarding a violation of N.C. Gen.Stat. § 14-318.2(a) by Defendant. Here, viewing the evidence, as we must, in the light most favorable to the State with every inference drawn in the State's favor, James, who was under two years old, was left alone and helpless-outside of Defendant's line of sight-for over six minutes inside a vehicle with one of its windows rolled more than halfway down in 18-degree weather with accompanying sleet, snow, and wind. Given the harsh weather conditions, James' young age, and the danger of him being abducted (or of physical harm being inflicted upon him) due to the
 
 *396
 
 window being open more than halfway, we believe a reasonable juror could have found that Defendant "created a substantial risk of physical injury" to him by other than accidental means.
 
 See
 
 N.C. Gen.Stat. § 14-318.2(a).
 

 Defendant acknowledges that her actions "may not have been advisable [ ] under the circumstances" but argues nevertheless that "this was not a case of child abuse." However, the only question before us in an appeal from the denial of a motion to dismiss is whether a reasonable juror
 
 could
 
 have concluded that the defendant was guilty based on the evidence presented by the State. If so, even if the case is a close one, it must be resolved by the jury.
 
 See
 

 State v. Franklin,
 

 327 N.C. 162
 
 , 170,
 
 393 S.E.2d 781
 
 , 786-87 (1990) ("Although we concede that this is a close question ... the State's case was sufficient to take the case to the jury.");
 
 State v. McElrath,
 

 322 N.C. 1
 
 , 10,
 
 366 S.E.2d 442
 
 , 447 (1988) (upholding trial court's denial of motion to dismiss even though issue presented was "a very close question").
 

 Because we are satisfied that the State's evidence was adequate to submit the case to the jury, the trial court properly denied Defendant's motions to dismiss. Accordingly, Defendant's argument is overruled.
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant received a fair trial free from error.
 

 NO ERROR.
 

 Judges ELMORE and HUNTER, JR. concur.
 

 [1]
 

 A pseudonym is used throughout this opinion to protect the identity of the minor child.