IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-92

Filed 1 October 2025

Mecklenburg County, No. 22CR219598-590

STATE OF NORTH CAROLINA

v.

LETOYA BENTON

Appeal by defendant from judgment entered 7 June 2024 by Judge Donnie Hoover in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 September 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Heidi M. Williams, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender, Callie S. Thomas, and Kathryn L. VandenBerg, for the defendant.*

TYSON, Judge.

Letoya Benton ("Defendant") appeals judgment entered 7 June 2024 upon the jury's verdicts convicting her of misdemeanor child abuse and contributing to the delinquency of a minor. We find no error.

## I.    Background

Defendant and her six-year-old daughter, "Susan," were spending time at the park near their residence on the evening of 18 June 2022. *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of minors). Defendant left Susan outside at

the park while she went inside her apartment to use the bathroom. At some point while Defendant was inside the apartment, Susan wandered away from the park alone on foot.

Between 7:00 p.m. and 8:00 p.m., Janicka Coleman ("Ms. Coleman") drove up to the intersection of North Tryon Street and Sugar Creek Road in Charlotte, where she noticed a young girl standing very close to the street speaking to two men in a car. Sensing the girl may be in danger, Ms. Coleman rolled down her window, called out to her, and convinced Susan to get inside her vehicle. After the young girl was unable to explain where she lived or provide the names of her parents, Ms. Coleman drove to a nearby gas station and contacted police.

Charlotte-Mecklenburg Police Officer Nathan Spann ("Officer Spann") responded to Ms. Coleman's call. He arrived at the gas station and met Ms. Coleman at approximately 8:15 p.m. Officer Spann testified the child had identified herself as "Susan", but she was unable to provide her parents' legal names. Officer Spann took Susan with him to the police station for further investigation.

Officer Spann testified they arrived at the police station at approximately 8:30 p.m., at which point he contacted the Charlotte-Mecklenburg Public School System to obtain the name and contact information of Susan's parents. After getting Defendant's phone number, Officer Spann attempted to call her six times. The call service informs the recipient a law enforcement officer is attempting to make contact. Officer Spann was unsuccessful in reaching Defendant. At 9:30 p.m., Officer Spann

called Susan's aunt, who immediately came to the police station. Approximately five minutes after the call with Ms. Lawrence, Defendant placed a 911 call to report Susan missing.

Defendant arrived at the police station at approximately 9:50 p.m. Defendant told Officer Spann she thought Susan was at a friend's house and did not feel the need to immediately call and report her missing. Defendant told Officer Spann she did not answer his six prior phone call attempts because her phone was dead.

Police released Susan to her aunt on 18 June 2022 and took Defendant into custody. Defendant was subsequently charged with misdemeanor child abuse and contributing to the delinquency of a juvenile. On 4 June 2024, the jury returned guilty verdicts on both charges. Defendant was sentenced as a prior record level I offender to 30 days' imprisonment and 12 months' supervised probation, amended to unsupervised probation upon proof Defendant had completed a parenting class. Defendant gave oral notice of appeal.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27 (2023).

## III. Issues

Defendant argues three issues on appeal: (1) no substantial evidence existed demonstrating each element of the offenses charged; (2) the trial court erred by allowing the State to make improper remarks during its closing argument; and, (3) the trial court erred in allowing racially discriminatory peremptory strikes of jurors.

## IV.    Substantial Evidence

Defendant argues the trial court erred in not granting her Motion to Dismiss. Defendant asserts the evidence presented was insufficient to support a finding and conclusion she had put her child at substantial risk of physical injury.  We disagree.

### A. Standard of Review

"Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo."  *State v. Golder*, 374 N.C. 238, 250, 839 S.E.2d 782, 790 (2020). Under *de novo* review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."  *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (internal quotation marks omitted).

"When considering a motion to dismiss for insufficiency of evidence, the court is concerned only with the legal sufficiency of the evidence to support a verdict, not its weight, which is a matter for the jury."  *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987) (internal citations omitted).  The evidence, including any contradictions and discrepancies, must be viewed in the light most favorable to the State. *Id.*

"If the record reveals that substantial evidence of the charged offenses has been presented, the case is for the jury and the motion to dismiss should be denied."  *State v. Beck*, 385 N.C. 435, 438, 894 S.E.2d 729, 732 (2023) (internal quotation marks omitted).  Substantial evidence is the amount necessary to persuade a rational juror

to accept a particular conclusion. *Id.*

## B. Analysis

### 1. *Misdemeanor child abuse*

Defendant argues insufficient evidence supports the charge of misdemeanor child abuse because no evidence tends to show she created or allowed to be created a substantial risk of physical injury to Susan. We disagree.

Our General Statutes establishes a Class A1 misdemeanor for "[a]ny parent of a child less than 16 years of age" to create or allow to be created a substantial risk of physical injury upon anything other than purely accidental means. *See* N.C. Gen. Stat. § 14-318.2(a) (2023). Actual physical injury to the child is not a required element to satisfy § 14-318.2(a), nor does this statute require the parent to have intended for some physical injury to occur as result of their action or inaction. *See State v. Watkins*, 247 N.C. App. 391, 395-96, 785 S.E.2d 175, 177-78 (2016).

North Carolina's courts have previously held evidence of a parent failing to appropriately supervise a young child is sufficient to support a charge of misdemeanor child abuse under section 14-318.2(a). *See id.* at 395-96, 785 S.E.2d at 178 (holding substantial evidence existed where a mother left her infant son in his car seat on a snowy afternoon with the window cracked for less than ten minutes); *see also State v. Reed*, 249 N.C. App. 116, 161-64, 789 S.E.2d 703, 730-31 (Stephens, J., dissenting), *rev'd per curiam based on dissent*, 371 N.C. 106 (2018) (holding a mother's decision to leave her toddler playing outside near a pool for five to ten

minutes was sufficient to withstand a motion to dismiss).

For a lack of parental supervision to rise to a level constituting misdemeanor child abuse, this Court considers: (1) the age of the child; (2) whether the child was left truly alone; (3) the duration of time the child was unsupervised; and, (4) the physical environment in which the child was left. *See Watkins*, 247 N.C. App. at 395-96, 785 S.E.2d at 177-78.

Here, Defendant left Susan unattended outside in a nearby public park while she went inside her apartment to purportedly use the bathroom. The record demonstrates no other adult being present and watching Susan while Defendant was inside. While it is unclear how long Defendant was inside her apartment prior to Susan walking away from the park, the record indicates Susan was wandering crowded streets alone for at least thirty-five minutes after Defendant left her unattended. The fact a six-year-old female was able to walk one-and-a-half miles demonstrates she was left unsupervised for a significant period of time. Although it is unclear for precisely how long Defendant was inside her apartment, Defendant made no effort to locate Susan when she noticed she was no longer in the park. Defendant simply presumed she had gone home with a friend. This lack of diligent supervision and actual knowledge of six-years-old Susan's whereabouts is sufficient basis for a reasonable juror to find and conclude Defendant was guilty of misdemeanor child abuse. We affirm the trial court's denial of Defendant's motion to dismiss on this ground.

## 2. *Contributing to the delinquency of a juvenile*

Defendant argues insufficient evidence tends to show she created or allowed to be created a substantial risk of physical injury to Susan. Defendant asserts Susan ending up in an unsafe location was not "reasonably foreseeable" and did not create a substantial risk of physical injury. We disagree.

The North Carolina statute for the crime of contributing to the delinquency and neglect of a juvenile provides:

> Any person who is at least 18 years old who knowingly or willfully causes, encourages, or aids any juvenile within the jurisdiction of the court to be in a place or condition, or to commit an act whereby the juvenile could be adjudicated delinquent, undisciplined, abused, or neglected . . . shall be guilty of a Class 1 misdemeanor.

N.C. Gen. Stat. § 14-316.1 (2023).

A neglected juvenile is defined in part as "one who does not receive proper care, supervision, or discipline from the juvenile's parent[.]" *In re Stumbo,* 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (internal quotation omitted). To appropriately adjudicate a child as "neglected," our courts have required "there be some physical, mental, or emotional impairment of the juvenile *or a substantial risk of such impairment* as a consequence of the failure to provide proper care, supervision, or discipline." *Matter of J.A.M.,* 372 N.C. 1, 9, 822 S.E.2d 693, 698 (2019) (internal quotation omitted).

This Court has previously deemed a parent leaving a child unsupervised in an

outdoor location to be conduct that is sufficient to establish neglect. *See Watkins,* 247 N.C. App. at 395-96, 785 S.E.2d at 178. In *Watkins*, we concluded an infant being left alone, helpless, and outside of the "line of sight" of a supervising parent established danger of abduction or physical harm. *Id.* This Court has also held exposure to an injurious environment by a supervising adult can sufficiently establish "an unacceptable risk of harm[.]" *In re D.C.,* 183 N.C. App. 344, 352-53, 644 S.E.2d 640, 644-45 (2007) (concluding that leaving a child unattended in a hotel room during the night is sufficient to support the determination neglect occurred).

Where a juvenile has been left unattended for long enough to be faced with a threat to their safety, either from themselves or from external forces, the lack of adult supervision is sufficient to rise to the level of a contribution to neglect. *See, e.g., id.; Watkins,* 247 N.C. App. at 395-96, 785 S.E.2d at 178. *But see In re D.S.,* 286 N.C. App. 1, 16-18, 879 S.E.2d 335, 346 (2022) (holding that there were insufficient findings of fact to support neglect where an infant was left unattended in his crib for five minutes while the father was home).

Here, Defendant conclusively left Susan outside of her line of sight when she entered her apartment. By leaving Susan unsupervised, Defendant created the risk Susan could be harmed by her own accord or at the hands of a third party. In fact, Susan did end up in an "injurious environment" when she was discovered alone and speaking to strangers on the side of a busy intersection. Susan's whereabouts opened her up to the substantial risk of being struck by oncoming traffic, being abducted by

a passerby, or a number of other conceivable ill fates, which could have resulted in physical or emotional harm. The jury could have also considered the child's fear and trepidation of being alone in a public park and that she walked over a mile alone to a busy intersection and interacted with strangers.

Because Defendant left Susan unsupervised for long enough to allow her to wander out of the park and walk over a mile from home to find herself in such a precarious location, a jury could find and conclude Defendant created an "unacceptable risk of harm" to her daughter. Because these evidentiary findings were sufficient for the trial court to deny Defendant's motion to dismiss, we affirm the trial court's ruling.

## V. Closing Argument

Defendant argues the trial court erred by permitting the prosecutor to make improper arguments about other case law during his closing argument. Defendant asserts the prosecutor made improper comparisons between the present case and two prior cases, and those comparisons unfairly prejudiced her in a manner sufficient to warrant a new trial. We disagree.

### A. Standard of Review

> The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection. In order to assess whether a trial court has abused its discretion when deciding a particular matter, this Court must determine if the ruling could not have been the result of a reasoned decision.

*State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (citations and quotation marks omitted).

## B. Analysis

In North Carolina, the whole case may be argued to the jury, including issues of law and fact. *See* N.C. Gen. Stat. § 7A-97 (2023). "This statute grants counsel the right to argue the law to the jury, which includes the authority to read and comment on reported cases and statutes." *State v. Lawson*, 285 N.C. App. 404, 412, 878 S.E.2d 1, 7 (2022) (quoting *State v. Gardner*, 316 N.C. 605, 611, 342 S.E.2d 872, 876 (1986)) (internal quotation marks omitted).

There are recognized limits on what portions of case law counsel may reference and rely on during closing arguments. *See Gardner,* 316 N.C. at 611, 342 S.E.2d at 876. Counsel is only permitted to argue provisions of law from previous cases that are applicable to the facts of the case at hand. *State v. McMorris,* 290 N.C. 286, 287, 225 S.E.2d 553, 554 (1976). Further, it is impermissible for counsel to read the facts of a published opinion together with the jury's result to imply such a verdict should be returned in the case at hand due to the similarity of issues. *See Gardner*, 316 N.C. at 611, 342 S.E.2d at 876 (internal citation omitted).

Here, the prosecutor relayed the facts from two published decisions, *Watkins* and *Reed*, both of which involved negligent supervision of young children as evidence of misdemeanor child abuse, to the jury during closing arguments. *Watkins*, 247 N.C.

App. 391, 785 S.E.2d 175; *Reed*, 249 N.C. App. 116, 789 S.E.2d 703. In relaying the facts and findings from *Watkins* and *Reed*, the prosecutor aimed to show the jury the types of issues to be considered when deciding whether a substantial risk of harm was imposed on a child. The prosecutor provided: "So those are the types of things that these – that you are to look at when you're determining the substantial risk of harm from someone to a child." While the prosecutor doubtlessly analogized the facts of *Watkins* and *Reed* to those in the present case, he never compared the previous facts and holdings in a way to directly or implicitly argue Defendant should be convicted due to the similarity of parental behaviors at issue. The prosecutor stated: "Those are the [facts and circumstances] you must consider when determining whether or not there's a substantial risk of physical injury."

Our precedent permits counsel to argue the facts of a previous case with "wide latitude" to show how the relevant law is applied and to present all reasonable inferences that can be drawn from the evidence. *State v. Jones,* 355 N.C. at 128, 558 S.E.2d at 105. S*ee also Gardner*, 316 N.C. at 611, 342 S.E.2d at 876. C*ontrast State v. Simmons*, 205 N.C. App. 509, 515, 698 S.E.2d 95, 100-01 (2010) (holding the prosecutor's closing argument remarks, "in that case, and, again, a Pitt County jury just as yourself found that defendant guilty," were impermissible).

The State made appropriate arguments and remained within the confines of what is permissible to present analogous facts and argue to a jury. The trial court's allowance of the prosecutor's testimony over Defendant's objection is not shown to be

an abuse of discretion. We need not address the issue of prejudice to Defendant by the decision. Defendant's argument is overruled.

## VI.   Peremptory Strikes

Plaintiff argues the trial court committed clear and prejudicial error in denying Defendant's *Batson* motion challenging peremptory strikes used against prospective jurors Phillips, Tyler, and Simpson. *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69. We disagree.

## A. Standard of Review

The standard of review for a trial court's ruling pursuant to *Batson v. Kentucky* is "highly deferential," and "a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. 472, 477-79, 170 L. Ed. 2d 175, 181-82 (2008). This highly deferential standard requires an appellate court to "consider whether the trial court's ruling regarding [a] defendant's *Batson* challenge was clearly erroneous." *State v. Clegg*, 380 N.C. 127, 140, 867 S.E.2d 885, 897 (2022). "Such clear error is deemed to exist when, on the entire evidence[,] the Court is left with the definite and firm conviction that a mistake has been committed." *Id.* at 141, 867 S.E.2d at 897 (internal quotation marks and citation omitted). A mistake cannot conclusively have been committed where "[t]wo permissible views of the evidence" exists. *State v. Lawrence*, 352 N.C. 1, 14, 530 S.E.2d 807, 816 (2000).

## B. Analysis

The analysis in *Batson v. Kentucky* "provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race[.]" *Snyder*, 552 U.S. at 476, 170 L. Ed. 2d at 180.

> "First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination."

*Id.* at 476-77, 170 L. Ed. 2d at 180-81 (citation and internal quotation marks omitted).

Here, the trial court found Defendant had made a sufficient *prima facie* case, and the prosecutor provided a race-neutral reason for his use of peremptory strikes. The only issue before this Court is whether the trial court was clearly erroneous in its determination that Defendant did not prove purposeful discrimination.

When analyzing step three of *Batson*, the trial court "must determine whether the defendant has satisfied his burden of proving purposeful discrimination." *State v. Golphin*, 352 N.C. 364, 427, 533 S.E.2d 168, 211 (2000).

> "In determining the presence or absence of intentional discrimination, this Court will consider various factors including 'the susceptibility of the particular case to racial discrimination, whether the State used all of its peremptory challenges, the race of witnesses in the case, questions and statements by the prosecutor during jury selection which tend to support or refute an inference of discrimination, and whether the State has accepted any African-American jurors.'"

*Id.* (quoting *State v. White,* 349 N.C. 535, 548-49, 508 S.E.2d 253, 262 (1998)).

Ultimately, all relevant facts and circumstances are viewed holistically, *see Flowers v. Mississippi,* 588 U.S. 284, 302, 204 L. Ed. 2d 638, 655-56 (2019), to determine whether the prosecutor's demeanor exhibited any discriminatory intent, *Snyder*, 552 U.S. at 477, 170 L. Ed. 2d. at 181.

Defendant objected to the prosecutor's decision to strike potential jurors "Phillips, Tyler, and Simpson." The prosecutor explained all his peremptory strikes had been used to eliminate single parents from the jury, due to the possibility a "single parent might look upon the facts of this case similarly to how this case was handled by the defendant" and be more sympathetic towards Defendant's actions. The prosecutor further explained he chose not to strike another black prospective juror, "Smith," because she was not a single parent. The trial court found the prosecutor's rationale was "reasonable and not pretextual" and was not discriminatory between "white single parents versus black single parents."

On these facts, Defendant has not shown the trial court committed clear error in denying her *Batson* motion. The prosecutor ultimately used five peremptory strikes: three against black prospective jurors and two against white prospective jurors. The record reflects the prosecutor's methodology was used universally without regard to race, as all prospective jurors were asked if they were married and had children during *voir dire.* No convincing evidence was offered the strikes used on the basis of single parenthood were pretextual for racial exclusion. We are unconvinced, in light of the totality of circumstances, the strikes used on Phillips,

Tyler, and Simpson were motivated to any extent by race.

Defendant urges us to alternatively remand this case if we do not find clear error existed in the trial court's ruling on the *Batson* motion. We are not inclined to do so. The trial court allowed the prosecution to provide reasoning for the peremptory strikes, permitted both parties to address the merits of the prosecution's proffered reasoning, and only then exercised the decision to deny Defendant's motion. The record is clear the trial court adequately considered the totality of the evidence and made sufficient findings based upon that evidence. We discern no error in the trial court's denial of Defendant's *Batson* motion. *Golphin*, 352 N.C. 364, 427, 533 S.E.2d 168, 211; *Flowers,* 588 U.S. at 302, 204 L. Ed. 2d at 655-56; *Snyder*, 552 U.S. at 477, 170 L. Ed. 2d. at 181. Defendant's argument is overruled.

## VII. Conclusion

The trial court: (1) made sufficient findings of fact to support the denial of Defendant's motion to dismiss; (2) did not commit prejudicial error in allowing the prosecutor to reference the facts from prior cases involving the negligent supervision of young children as evidence of misdemeanor child abuse during closing argument; and, (3) did not err in denying Defendant's *Batson* motion in light of the peremptory strikes used on prospective jurors Phillips, Tyler, and Simpson. Defendant received a fair trial, free from the prejudicial errors she preserved and argued on appeal. We discern no error in the jury's verdicts or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Judges GORE and MURRY concur.